FILED
2021 Jun-08  PM 01:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BRANDON McNAIR, on behalf of<br>himself and others similarly situated | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | |
| v. | ) | _____ |
| | ) | |
| AUTOCAR, LLC;<br>AUTOCAR INDUSTRIES, LLC;<br>and BIRMINGHAM ASSEMBLY<br>OPERATIONS, LLC | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

### I.  INTRODUCTION

1.     This is an action for legal and equitable relief to redress unlawful discrimination against the plaintiff and the putative class he represents. The suit is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991 (hereinafter "Title VII"), which provides for relief from discrimination based on race, color, and national origin in employment, and 42 U.S.C. §1981 (hereinafter "§1981"), which provides for relief against discrimination based on race, ancestry, or ethnic characteristics in employment. The plaintiff seeks

1

declaratory, injunctive, and other equitable remedies, including reinstatement and backpay, as well as compensatory and punitive damages, costs, attorneys' fees, and expenses.

2.    The defendant's termination and hiring plan had disparate impact on the basis of national origin, ancestry, ethnicity, or race. That plan disproportionately favored and increased the number of employees of Hispanic national origin, ancestry, ethnicity, and/or race and, at the same time, disproportionately disfavored and decreased the number of employees not of such national origin, ancestry, ethnicity, and/or race. The defendant took the jobs held by non-Hispanic and/or African American employees and disproportionately gave them to Hispanic employees and new hires in a manner which had disparate impact on the plaintiff and persons of African American or non-Hispanic national origin, ancestry, ethnicity, and/or race. Such a policy or practice disproportionately favored Hispanic employees and applicants, who are typically and disproportionately non-African American, and disproportionately disfavored African Americans who are predominantly non-Hispanic, particularly in the geographic areas in which the defendant draws and employs its workforce.

## II.   JURISDICTION AND VENUE

3.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 2201, and 2202, and 42 U.S.C. §2000e-5(f)(3).

4.    The unlawful employment practices alleged hereinbelow were committed by the defendants within Jefferson County, Alabama and within this district. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(g).

5.    The plaintiff requests a jury trial on all equitable claims and defenses and all issues triable by a jury.

## III.   PARTIES

6.    The plaintiff, Brandon McNair (hereinafter "Plaintiff" or "McNair"), is an African American male citizen of the United States, is over the age of nineteen (19), and was a resident of the State of Alabama during the relevant time period. The plaintiff was employed by the defendants, Autocar, LLC, Autocar Industries, LLC, and Birmingham Assembly Operations, LLC at all times relevant to this lawsuit. The plaintiff's ancestry, lineage, ethnicity, race, and national origin are not Hispanic.

7.    The defendant, Autocar, LLC (hereinafter "defendant" or "Autocar"), is an employer subject to suit under Title VII and a person subject to suit under 42

3

U.S.C. §1981. The defendant has more than fifteen (15) employees and conducted business in Jefferson County, Alabama, which is in this district. The defendant was, at all times relevant to this action, the plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964 and is a person subject to suit under 42 U.S.C. §1981.

8.     The defendant, Autocar Industries, LLC (hereinafter "defendant" or "Autocar"), is an employer subject to suit under Title VII and a person subject to suit under 42 U.S.C. §1981. The defendant has more than fifteen (15) employees and conducted business in Jefferson County, Alabama, which is in this district. The defendant was, at all times relevant to this action, the plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964 and is a person subject to suit under 42 U.S.C. §1981.

9.     The defendant, Birmingham Assembly Operations, LLC (hereinafter "defendant" or "Autocar"), is an employer subject to suit under Title VII and a person subject to suit under 42 U.S.C. §1981. The defendant has more than fifteen (15) employees and conducted business in Jefferson County, Alabama, which is in this district. The defendant was, at all times relevant to this action, the plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964 and is a person subject to suit under 42 U.S.C. §1981.

10.    The defendants, Autocar, LLC, Autocar Industries, LLC, and Birmingham Assembly Operations, LLC (hereinafter referred to collectively as "defendant" or "Autocar"), were a single integrated enterprise and were the plaintiff's employer according to Title VII and 42 U.S.C. §1981. The defendants are related entities with common ownership, share the same physical location, and have the same registered agent and the same address for the service of process.

11.    In the alternative, the defendants, Autocar, LLC, Autocar Industries, LLC, and Birmingham Assembly Operations, LLC (hereinafter referred to collectively as "defendant" or "Autocar"), were a joint operation and the plaintiff's employer according to Title VII and 42 U.S.C. §1981. These defendants are related entities, share the same physical location, and have the same registered agent and the same address for the service of process.

## III.   <u>CLASS CERTIFICATION ALLEGATIONS</u>

12.    The plaintiff brings this action on behalf of himself and all of the defendant's employees subject to its policies set forth in paragraph 2 of this Complaint whose national origin is not Hispanic.

13.    Class certification is sought separately for Counts One and Five set forth below pursuant to Fed. R. Civ. P. 23(b)(2) for the equitable relief on the

plaintiff's claims. For the plaintiff's cause of action for punitive damages, the plaintiff seeks class certification under either Rule 23(b)(2) as part of the relief available at Stage I of a bifurcated trial for injunctive relief and/or as a hybrid certification under both Rules 23(b)(2) and 23(b)(3).

14. The named plaintiff is a member of the class he seeks to represent. Prosecution of the claims of the named individual plaintiff requires adjudication of the same question that is common to the putative class: whether the defendant's policies set forth above have disparate impact and/or disparate treatment based on national origin in a manner made unlawful by Title VII of the Civil Rights Act of 1964, as amended, or 42 U.S.C. §1981.

15. The class that the named plaintiff seeks to represent is too numerous for joinder to be practicable. The defendant has acted on grounds generally applicable to the class as a whole by adopting and following systemic policies that discriminate on the basis of national origin, ancestry, ethnicity, and/or race. Such policies are the defendant's standard operating procedure for the class as a whole rather than a sporadic occurrence related to individual applicants or employees.

16. Certification of the proposed class is the most efficient and economical means of resolving the questions of law and fact that are common to such class and

the individual claims of the named plaintiff. The individual claims of the named plaintiff require resolution of the common question of whether the defendant's policies challenged in this case caused disparate impact or disparate treatment on persons of national origins, ancestry, ethnicity, and/or race that are not Hispanic. In order to gain such relief for himself, as well as for the putative class, the named plaintiff must first establish the existence of disparate impact and/or systemic national origin discrimination as the premise of such relief. Without class certification, the same evidence and issues would be subject to repeated re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

17.    Injunctive, declaratory and other equitable remedies are the predominant relief sought. The defendant has refused to act on grounds generally applicable to the class by refusing to adopt or follow policies which do not have disparate impact or otherwise systemically discriminate against persons of non-Hispanic national origin, ancestry, ethnicity, and/or race. The defendants' systemic discrimination and refusal to act on grounds that do not discriminate on the basis of national origin, ancestry, ethnicity, and/or race has made appropriate final injunctive and declaratory relief with respect to the class as a whole. Such equitable remedies are dependent upon proof of the defendant's

individual and class-wide liability at the end of Stage I of a bifurcated trial. Such determination at Stage I is also the essential predicate for the named plaintiff's and class members' entitlement to monetary and non-monetary remedies at Stage II of such a trial. Declaratory and injunctive relief flows directly and automatically from proof of the common questions of law and fact regarding the existence of disparate impact or systemic discrimination at Stage I. Such relief is the factual and legal predicate for the named plaintiff's and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by such systemic discrimination

18.  Alternatively, class certification is sought pursuant to Fed. R. Civ. P. 23(b)(3). The common issues of fact and law affecting the claims of the named plaintiffs and the proposed class members, including, but not limited to, the common issues identified in the above paragraphs predominate over any issues affecting only individual claims. A class action is superior to other available means for the fair and efficient adjudication of the claims of the named plaintiffs and members of the proposed class. The cost of proving the defendant's disparate impact and systemic discrimination makes it impracticable for the members of the proposed class to control the prosecution of their claims individually.

## IV.    ADMINISTRATIVE EXHAUSTION

19.    The plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. The plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the occurrence of the last discriminatory act. The plaintiff timely filed this lawsuit within 90 days of the receipt of notice of right to sue from the EEOC.

20.    On or about April 7, 2020, the plaintiff timely filed a charge of discrimination with the EEOC (Charge Number: 420-2020-00943) alleging, *inter alia*, discrimination based on race and retaliation. Attachment 1.

21.    On or about March 13, 2021, the EEOC issued the plaintiff Notice of Right to Sue which is dated March 13, 2021, which the plaintiff received several days later, and has timely filed this Complaint within 90 days of receipt of that notice. Attachment 2.

22.    The plaintiff's claims of discrimination under 42 U.S.C. §1981 do not require administrative exhaustion.

V.   STATEMENT OF FACTS AND CLAIMS

23.   The plaintiff re-alleges all of the allegations in the Complaint and incorporates the same by reference herein.

24.   Mr. McNair was hired by the defendants on or about August 14, 2017 and was terminated on or about November 13, 2019.

25.   Throughout his employment, Mr. McNair performed his job duties in an exemplary manner.

26.   Mr. McNair was not counseled or disciplined prior to his termination.

27.   During 2019, the defendant formulated a plan to terminate a large number of employees at its Birmingham, Alabama operation and replace those employees with Hispanic employees. Human Resources Manager Lisa Jordan (Caucasian) was in charge of recruiting new employees. Jordan spoke openly to employees in the defendant's Human Resources Department about the defendant's plan to terminate African American employees and replace those employees with Hispanic employees.

28.   Jordan stated that the company planned to hire "a bunch of Mexicans" because they were "cheaper" and would "work harder for less pay."

29.   During fall 2019, the defendant printed an advertisement in Spanish which was placed on a bulletin board in at least one Mexican restaurant which

advertised jobs for $12.00 per hour, which was below the normal rate offered to new employees.

30. On or about November 13, 2019, the defendant gave Mr. McNair a letter dated November 13, 2019 and signed by Tamitra Cole, Autocar Trucks Human Resources Generalist, which stated that "effective Wednesday, November 13, 2019, your employment with Birmingham Assembly Operations d/b/a Autocar, LLC, was terminated."

31. Mr. McNair was among a number of approximately twenty (20) employees at the defendant's Birmingham, Alabama location who were provided substantially the same letter and were terminated on or about the same date.

32. Upon information and belief, the defendant laid off a group of employees at its production facility in Hagerstown, Indiana on the same or substantially similar basis.

33. The majority of the employees from the Birmingham, Alabama location terminated by the defendant on or about November 13, 2019 were African American and black or non-Hispanic.

34. Ms. Cole told Mr. McNair and the approximately twenty (20) other individuals the defendant terminated that the reason they were being

terminated as part of a reduction in force which was necessary because of low production numbers.

35.  Upon information and belief, the defendant terminated employees in its Hagerstown, Indiana location and provided those employees with substantially the same explanation. Upon information and belief, the majority of the employees terminated at this location were African American and the majority of the employees hired were Hispanic.

36.  Soon after the defendant terminated the plaintiff, he learned from former co-workers that the defendant replaced these employees with new hires, the vast majority of whom were Hispanic. The defendant did not contact the plaintiff and recall him. Upon information and belief, the defendant did not contact any of the other employees from the Birmingham, Alabama location and recall them either.

37.  Upon information and belief, the defendant began to hire new employees in its Hagerstown, Indiana location soon after it terminated these employees and did not recall any of the employees it terminated.

38.  The defendant's termination and hiring plan itself disproportionately favored and increased the number of employees with an Hispanic national origin, ancestry, ethnicity, and/or race and, at the same time, disproportionately

disfavored and decreased the number of employees of a non-Hispanic national origin, ancestry, ethnicity, and/or race and/or who were African-American. The defendant took the jobs held by non-Hispanic and/or African-American employees and disproportionately gave them to Hispanic employees and new hires in a manner which had disparate impact on the plaintiff, African-Americans and/or persons of a non-Hispanic national origin, ancestry, ethnicity, and/or race.

39.  Such policy or practice disproportionately favored Hispanic employees and applicants who are typically and disproportionately not African American, and disproportionately disfavored African Americans who are predominantly non-Hispanic, particularly in the geographic areas in which the defendant draws and employs its workforce.

40.  The defendant also used such termination and hiring plan as a pretext for disparate treatment of persons of non-Hispanic national origin, ancestry, ethnicity, or race and/or who were African American, including the plaintiff. As part of that plan, the defendant utilized selection procedures and criteria for deciding who to retain and who to terminate as employees which had disparate impact on African American employees like the plaintiff and which were used as a pretext for disparate treatment on the basis of race.

41.   On or about April 7, 2020, the plaintiff timely filed a charge of discrimination with the EEOC (Charge Number: 420-2020-00943) alleging, *inter alia*, discrimination based on race, color, national origin, and retaliation. Attachment 1.

42.   In its response to that charge, the defendant claimed that Mr. McNair "displayed a pattern of attendance and conduct violations for which he was counseled and disciplined." However, the defendant failed to explain how such alleged discipline was relevant to its decision to terminate Mr. McNair, or the other employees terminated, since the defendant informed Mr. McNair and the other employees that the terminations were part of a reduction in force and terminated them that same day. The defendant did not provide Mr. McNair any advance notice of the reduction in force and never told Mr. McNair that his attendance or performance were played a role in his selection, the selection of other employees, or the non-selection of other employees for the reduction in force.

43.   The defendant failed to provide the EEOC with any documents which would support its assertion that "Autocar selected employees in particular departments and/or areas of the plant for the reduction-in-force based on factors including attendance, disciplinary history, and performance".

14

44.   The defendant admitted to the EEOC that, consistent with Mr. McNair's allegations, it continued to hire new employees after the reduction-in-force and did not claim it recalled Mr. McNair or any of the employees terminated as part of the supposed reduction in force.

45.   The defendant claimed that "seven (7) of the twenty-four (24) employees terminated in the November 2019 reduction-in-force [were] Caucasian."

46.   The defendant claimed that "a majority of the employees hired to work on Autocar's production floor in the months following the reduction-in-force are African-American and Non-Hispanic."

47.   The defendant claimed "African-American and Caucasian employees were selected for the reduction-in-force and African-American, non-Hispanic employees were hired to meet production demands in the months thereafter."

48.   The defendant did not claim that any Hispanic employees were terminated as part of the reduction in force during November 2019 and did not deny that Hispanic employees were hired soon after Mr. McNair and the other employees were terminated, as Mr. McNair alleged.

49.   On or about March 13, 2021, the EEOC issued the plaintiff Notice of Right to Sue which is dated March 13, 2021, which the plaintiff received several days

15

later, and has timely filed this Complaint within 90 days of receipt of that notice. Attachment 2.

## V.    <u>DAMAGES</u>

50.    As the result of the defendant's conduct, the plaintiff was deprived of income and other benefits due him. The plaintiff also suffered embarrassment, humiliation, inconvenience, and mental distress.

51.    The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, back pay, an injunction, and compensatory and punitive damages is his only means of securing adequate relief.

52.    The plaintiff is suffering and will continue to suffer irreparable injury from the defendants' unlawful conduct as set forth herein unless enjoined by this Court.

### <u>COUNT ONE: DISPARATE IMPACT IN VIOLATION OF TITLE VII</u>

53.    The plaintiff re-alleges all of the allegations in the Complaint and incorporates the same by reference herein.

54.    As set forth more fully in the foregoing statement of facts and introductory

paragraphs, the defendant violated Title VII of the Civil Rights Act of 1964, as amended, by adopting and using policies, factors, procedures, plans, and criteria set forth above which have disparate impact on the basis of national origin, ancestry, ethnicity, and/or race, and by terminating the plaintiff and other African American or non-Hispanic employees on the basis of such policies, factors, procedures, plans, and criteria which have disparate impact and otherwise discriminate on the basis of national origin, ancestry, ethnicity, and/or race.

55. This policy directly and adversely affected the plaintiff in the ways set forth in this Complaint.

56. Based on such policy and disparate impact, the defendant discriminated against the plaintiff and the class he represents on the basis of national origin, ancestry, ethnicity, and/or race in the ways set forth in the Class Certification Allegations and Statement of Facts and Claims. The defendant terminated the plaintiff pursuant to such policy, which adversely affected his compensation, terms and conditions of employment, and opportunity to be hired, re-hired or recalled from layoff.

57. The plaintiff seeks all equitable and legal relief necessary to remedy such unlawful discrimination on behalf of himself and the class he represents,

17

including, without limitation, declaratory and injunctive relief, reinstatement, backpay, damages, costs, attorneys' fees, expenses and such other equitable and legal remedies necessary to make plaintiffs whole and to deter further discrimination on the basis of national origin, ancestry, ethnicity, and/or race.

### COUNT TWO: DISPARATE TREATMENT ON THE BASIS OF RACE IN VIOLATION OF TITLE VII AND 42 U.S.C. §1981

58.     The plaintiff re-alleges all of the allegations in the Complaint and incorporates the same by reference herein.

59.     The defendant intentionally discriminated against the plaintiff on the basis of race in violation of Title VII and 42 U.S.C. §1981 when it terminated his employment.

60.     The defendant engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

61.     As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

### COUNT THREE: DISPARATE TREATMENT ON THE BASIS OF RACE, COLOR, AND/OR NATIONAL ORIGIN IN VIOLATION OF TITLE VII

62.     The plaintiff re-alleges all of the allegations in the Complaint and incorporates the same by reference herein.

63.     The defendant intentionally discriminated against the plaintiff on the basis of

race, color, and/or national origin with regard to job assignments, discipline, and other terms and conditions of employment, including termination in violation of Title VII.

64. The defendant engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

### COUNT FOUR: DISPARATE TREATMENT ON THE BASIS OF RACE, ANCESTRY, AND ETHNICITY IN VIOLATION OF 42 U.S.C. §1981

65. The plaintiff re-alleges all of the allegations in the Complaint and incorporates the same by reference herein.

66. The defendant intentionally discriminated against the plaintiff on the basis of race, ancestry, and ethnicity with regard to job assignments, discipline, and other terms and conditions of employment, including his termination in violation of 42 U.S.C. §1981.

67. The defendant engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

68. As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

### COUNT FIVE: DISPARATE IMPACT IN VIOLATION OF TITLE VII (HIRING,

### REHIRING, RECALL, TRANSFER, PROMOTION, AND COMPENSATION)

69.   The plaintiff re-alleges all of the allegations in the Complaint and incorporates the same by reference herein.

70.   As set forth more fully in the foregoing statement of facts and introductory paragraphs, the defendant violated Title VII of the Civil Rights Act of 1964, as amended, by adopting and using the policies, factors, procedures, plan and criteria set forth above which are facially discriminatory and have disparate impact on the basis of national origin, ancestry, ethnicity, and/or race, and by not hiring, rehiring, recalling, transferring, promoting or compensating the plaintiff and other African-American or non-Hispanic employees on the basis of such policies, factors, procedures, plan and criteria which have disparate impact and otherwise discriminate on the basis of national origin, ancestry, ethnicity, and/or race.

71.   In addition, the defendant violated Title VII by using such policies, factors, procedures, plan and criteria as a pretext for intentional discrimination based on national origin and race in the ways set forth above, and violated §1981 by using such policies, factors, procedures, plan and criteria as a pretext for intentional discrimination based on ancestry, ethnicity, and race in the manner set forth above.

72.     The plaintiff seeks all equitable and legal relief necessary to remedy such unlawful discrimination on behalf of himself and the class he represents, including, without limitation, declaratory and injunctive relief, reinstatement, backpay, damages, costs, attorneys' fees, expenses and such other equitable and legal remedies necessary to make plaintiff whole and to deter further discrimination on the basis of national origin, ancestry, ethnicity, and/or race.

## VI.   PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.     Grant the plaintiff a declaratory judgment holding that the actions of the defendants described hereinabove violated and continue to violate the rights of the plaintiff as secured by Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981.

2.     Grant the plaintiff a permanent injunction enjoining the defendants, their agents, successors, employees, attorneys and those acting in concert with the defendants and on the defendants' behalf from continuing to violate Title VII of the Civil Rights Act of 1964 and/or 42 U.S.C. §1981.

3.     Issue an injunction ordering the defendants not to engage in discrimination and acts which violate Title VII of the Civil Rights Act of 1964 and/or

42 U.S.C. §1981.

4.     Grant the plaintiff an order requiring the defendants to make the plaintiff whole by reinstating him in the position he would have occupied in the absence of the discrimination as set out herein, backpay (plus interest), compensatory, and punitive damages.

5.     The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted,

*/s/ H. Wallace Blizzard*
H. Wallace Blizzard (asb-8969-b59h)
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0593
wblizzard@wigginschilds.com

*Counsel for Plaintiff*

**JURY DEMAND**

**PLAINTIFF DEMANDS A TRIAL BY STRUCK
JURY ON ALL ISSUES TRIABLE BY A JURY.**

*/s/ H. Wallace Blizzard*
OF COUNSEL

**Plaintiff requests this Honorable Court to issue the attached Summons for Plaintiff to serve Defendant with the following: Summons, Complaint.**

**Defendants' Addresses:**
Autocar, LLC
c/o National Registered Agents Inc.
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Autocar Industries, LLC
c/o National Registered Agents Inc.
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Birmingham Assembly Operations, LLC
c/o National Registered Agents Inc.
2 North Jackson Street, Suite 605
Montgomery, AL 36104

*/s/ H. Wallace Blizzard*
OF COUNSEL